24 1889 Jacqueline Bunnell versus William Beaumont Hospital oral argument not to exceed 15 minutes per side counsel perry for the plaintiff appellant good morning your honors i appreciate you having me here today my name is ryan perry with miller cohen here on behalf of the plaintiff slash appellant as the court is surely aware this is an extremely factually complicated case and even with 15 minutes straight i don't believe we'd have the time to actually go through a even basic factual summary so i'll proceed on the the assumption that the court has in fact read the the briefs in this case i would like to point out that at the summary disposition phase both defendant and plaintiff filed motions permitting from with the court permitting them to exceed the page limits typically available for motion for disposition because of how factually intensive the case was it was granted for both the plaintiff and the defendant the parties combined filed several dozen uh pages several dozen separate exhibits i believe there was some crossover between them but individual exhibits would have still exceeded 30 uh 30 exhibits at that point in time so i think instead it would be most helpful to specifically direct the court to consider and spend some time on the events of october 21st of 2020 and what occurred there my client at all times relevant when she was working with an ultrasonographer with beaumont out of their royal oak location she took maternity leave and was scheduled to return on october 21st of 2020 at the expiration of her 12 weeks as in compliance of beaumont policy five days before she submitted the appropriate return to work paperwork to her immediate supervisor and then five days later on october 21st she is ready to return to work purely out of coincidence as far as we can tell and in no way related to the fact that she was returning that day on october 21st uh the manager of beaumont's uh echocardiology department uh in dearborn in dearborn sent an email to tracy zyder the plaintiff's supervisor specifically asking if plaintiff was still available because they had a position that quote they could not find qualified applicants for they literally couldn't even find people were qualified to apply for it well the question was it's she she's not identified by name it's sort of like is that person still available and apparently it's not it's undisputed that it's the plaintiff correct there's there's no way you could read that email and come to the conclusion that there was any confusion as to who they were talking about specifically because tracy zyder's response was that this individual you're asking about uh just took maternity leave uh so we don't even know if she'd be interested in the job i'm speaking with my supervisor today and i'll come back and follow up with you the only detail that she mentioned about plaintiff was her protected status and her protected activity her use of fmla related to maternity leave she had mentioned her work history her performance her ethic her personality her name nothing the only thing she mentioned was that she had was on fmla because she just had a baby it's not a single other relevant detail she to your question was the only employee in their department who gave birth that year as the court is aware there was another employee who was i'm i'm not entirely sure what the law is so i i think this is related to your fmla claim so another important point worth discussing i believe that there that there have been attempts by opposing counsel and even some confusion as to lower court as to how this all inter interplays i believe october 21st is indicative of many if not most of the plaintiff's claims in this case we believe that this is both a straight failure to uh to perform under fmla but also evidence of animus and a deliberate adverse employment i don't understand um so there seems to be two types of fmla claims there's a retaliation claim and i guess what the courts have called an interference claim are you bringing both of those or correct your honor yes we have provided arguments that beaumont was first and foremost obligated to return her to an equivalent position but the as a matter of law this would not strike me as an equivalent position because the position she was in when she went on fmla leave was a laid off position so it just seems to me that there was no equivalent position other than laid off so there might be a difference about whether animus drove her refusal to tell her about the decision but it strikes me as how could we say it's equivalent if she was laid off at the time she took fmla leave so what we can say is as part of an fmla uh um not an fmla interference claim uh there's more than simply just returning that person to the position that they were in at the time they started their fmla there are several considerations the obvious example as defendant has brought up and it is fairly commonplace if a person's position is just simply eliminated while they're on fmla there's a rule that says that they're not required to put him back in that position so if the plant closes down somebody's two weeks into a four-week fmla leave and the plant closes down that person can be fired conversely if that person is one of two hr personnel or one of three or four hr personnel at that plant when they shut it down and the other three people all get transferred to another location but the person who's on fmla doesn't get transferred to another location uh clearly there is more than an obligation to return them to the exact position they were in there's the fact that that person didn't receive the full benefits their benefits their employment while they were on leave but if but if the basis if the basis was not related at all to fmla leave and the fourth person was not transferred was just because the employer say undisputably viewed that person as uh the worst of the four employees that wouldn't be an fmla violation what if they would have to provide evidence showing that there was an objective analysis that actually did conclude that but the the point of this is it's also possible that that person just was denied their their obligation or their benefits of employment one of the cases that we raised specifically talks about the benefits of employment uh callahan so in callahan the employer uh deliberately misrepresented the availability of other positions transferred to uh to the to the plaintiff in that case as opposed to simply not telling them here they deliberately lied in that case and they said that there are no equivalent positions available and so that person in reliance on that statement didn't go forward and trying to apply to other positions in this particular case we can show them our client was treated differently and denied opportunities because she was on fmla there's testimony from kevin brankley on the hr expert uh they're the hr manager associated with this case where he literally said that employees on medical leave are not contact not contacted about open positions while they're on medical leave we also have an email in this case from my client to human resources saying so i agree that there's evidence perhaps um on the reason there was no contact was because of the fmla leave but that strikes me as not an interference claim that strikes me as what we have called a retaliation claim that you have treated um your client unfavorably because she took fmla leave which is different than having to restore to the position so so again i i don't know that i would say that it's as simple as were they restored to their equivalent position if yes there's no interference claim if no then there's maybe an interference claim i'm saying that they're that fmla separate from a retaliation claim imposes additional obligations on the employer such as to ensure that that employee is not denied material benefits of their their employment while they're on leave an employer doesn't need to make for lack better term doesn't need to give them a handicap so if they're evaluating how many widgets they manufactured over a year and this employee was gone for 12 weeks they don't need to to you know do a whole bunch of min maxing to try to account for that uh but but at the same time you know the an employee if they are uh you know supposed to be getting some kind of again as we saw with miss finnell if employees who are not on fmla leave are being counseled about potential job openings or contacted about potential job openings uh that and she is not she's being denied a material benefit of her employment because she is on fmla leave the question i think also isn't quite so much is she returned the position that she was in but to some degree there's a question of where would she have been if she hadn't been on fmla leave so again as we see with if a position is is terminated they would have been terminated then so they're still terminated when their fmla leave ends if this person would have gotten a promotion but for the fact that they were on fmla leave then the fact that they took fmla leave has cost them an employment opportunity where the law says that's not allowed similarly here again we specifically have testimony that miss finnell tried to reach out to defendants human resources department to say hey uh you know i am trying to look for new jobs um but they tell me that i can't because i'm on medical leave and i need to be ready to accept a job the moment it becomes available that is more that's not an fmla retaliation there's no animus indicated there but it's still failure on the employer's would that be a failure though because um it wouldn't be necessarily based on the fact that she's taken fmla leave would be based on the requirement that that specific job was a like immediate need um and that's that strikes me as distinct it just strikes me that um it's not it's not retaliation for her taking fmla leave it's because we need to fill this position right now and she can't fill this position right now because she's on leave well if there's a and they need to fill it right now that might be a legitimate reason there's no reason to believe that that was true of any of the positions that she was not offered or informed about while she was gone an employer still has to provide qualifying employees with fmla leave they can't say well your job's too important we can't give you fmla and so if at the same employer another position opens up that they would be qualified for if there is something truly time sensitive and they need somebody in that seat right then and there sure that might be a legitimate reason but if they just say well we just really want somebody there we think this is an important position in the company we can't wait for you to use your legally you know provided fmla that's just a violation of fmla it's a rare circumstance i think that you really only see regarding internal transfers because a new employee a new hire isn't going to qualify for fmla but when there's a position internally you can certainly see that the same employer is still bound by the same rules and the employee can still qualify for fmla even in this new seat the same employer do i understand the facts i i thought that she had said i can come back on the 21st she was she was ready and available to come back on the 21st tracy zyder denied her that opportunity she she didn't pass this information along and there is a material incompatibility between the testimony of tracy zyder and her own supervisor lauren burgett on what occurred during the conversation between the two on the 21st it is fundamentally incompatible and furthermore the testimony of both of those individuals was fundamentally misunderstood by the lower court radically horrifically misunderstood and in fact at one point the report and recommendation used ellipses as part of a quote from lauren burgett the my client's supervisor's supervisor to materially alter what the the the quotation said literally if they had included the full quote it would have fundamentally changed but instead they said she she went to the the department heads ellipses and then said to come back with names the ellipses part said she went to the department heads and told them to come up with a list of names and your own criteria for how you determine them and then come back to me with that list of names and but the the report and recommendation used the quote with minus that middle part to support the idea that lauren burgett had actually come up with a list of names and her own criteria and then gave it to the department heads and said using this criteria find the list of names the ellipses specifically literally said it was up to the department heads to come up with their own criteria for how they selected these people uh the there there are so many we don't we wouldn't have time if we had twice as much time to cover all the material misunderstandings of fact by the lower court the misrepresentations repeated throughout this case there there are so many points at which we it is easily disprovable the conclusions that were came to by the lower court this is the first and only opportunity we've had to actually address in real time with somebody sitting at the bench okay thank you counsel good morning thank you david sasanti on behalf of appellee william beaumont hospital judge murphy i i kind of share in your same confusion as to where this um this dearborn position comes into play and i think part of the reason that there's some confusion is because there's i don't i don't ascribe any any type of motive i don't know if it's an intentional or unintentional conflating of issues so from an fmla perspective you're right there's an interference claim which is not intent-based it's strict liability you violated the law or you didn't and then you have an fmla retaliation claim which is the exact opposite it's only intent-based so when we're looking at the dearborn position it's important to understand the framework that we're looking at it when we're looking at it from an interference claim we're only looking to whether or not the plaintiff was entitled to be placed in that position when her fmla leave ended and as i think judge murphy you pointed out and we clearly argued in our briefing before this court in the lower court when plaintiff commences her fmla leave she is an ultrasonographer at the royal hospital on layoff status that is her position that is the position that she was restored to and i think it's literally that simple and and that's how the lower court looked at it what was the plaintiff status at the time she commenced leave and where did you put her when she returned why um so i i might be with you there but on the retaliation claim i first off i think it be a misnomer to call it a retaliation claim since the statutory text on retaliation the provision what does it say it shall be unlawful for any employer to discharge or any other manner discriminate against any individual for opposing any practice made unlawful that's not really what we're talking about it wasn't because she opposed a practice i think her view is that because she her rights she was retaliated so i do think it actually also falls within the interference claim so it would be essentially because i took this fmla leave if you could prove that the company intentionally did some bad thing to her that that would be interfering with her rights to take fmla leave so so and if that if i view it that way it's not necessarily i we talked about whether this was an adverse employment action that's text that's in title 7 about terms and conditions of employment here the text is just uh it prohibits an employer from interfering with any right provided under this chapter and you could say that failing to give her to offer her the dearborn position if you could actually prove that it was based on her fmla leave that that would interfere well your honor i wish i had a case here to cite to you i can tell you that the the law in this area is very clear that interference cases are not intent based i i i recognize that our cases say that yeah i'm calling it interference just because we our cases call it retaliation but usually like in the title 7 context retaliation is the claim that is i have opposed a practice i've complained about discrimination and then you retaliate that's not what this case is about and i think and the reason why i text matters to me and i got to try to figure out what is the text that is allegedly violated by this intent thing and i do think it's the interference text not the discrimination thank you for clarifying yes well look there's no doubt about it that if plaintiff had presented evidence or even a question of fact as to whether or not she was denied the dearborn position because she took fmla leave like that was the motivating factor that's that's retaliation and we're not arguing isn't there enough to go to the jury on that i mean throughout the her supervisor was somewhat hostile about the fact or annoyed miffed at her for um asking for accommodations and um you know she she wasn't particularly happy about this pregnancy then she takes the leave and she's already said i'm ready to come back and the inquiry comes in and the supervisor superior is like well didn't you tell her and she's like well you know i thought we'd try to get her here i mean it just seems bizarre that she didn't tell them that this person was available well let me if i can address a few things i don't believe she was hostile towards the pregnancy and she wasn't hostile towards the accommodations if you recall the very first communication which this plaintiff had a a propensity to secretly tape everything so we know exactly what was discussed during the very first conversation about the pregnancy it is oh my gosh congratulations that's great they talk about their experiences as mothers and and and health care practitioners and but you have to take the whole context of the relationship and there's some other things that aren't so rosy yes and i'm getting i'm getting there i'm not going to ignore that so in the first conversation the plaintiff says i would prefer not to be exposed to x-rays and tracy's eater the managers oh that's fine you don't even need to know don't worry about it no problem second conversation she says i want to be um i do not want to be exposed to uh patients with infectious diseases that's the conversation where zeter says um okay she says okay there's never a dispute as to whether she says okay and then she says you know this this could potentially put a strain on the department because recall that there was already information flowing to this supervisor that that plaintiff had been already refusing to see infectious disease patients which means what which means her co-workers then have to fill the void she reacts by her own admission inappropriately she goes back unilaterally and apologizes and i've listened to the tape and i've read the transcript it's more than 10 times she apologizes and then she says if you're not happy with my my apology go talk to lauren burgett which plaintiff does and lauren burgett says okay i'm sorry your accommodations granted and life from there goes forward there is not a single point in the record after the apology where tracy's eater expresses any animosity towards the plaintiff because she's pregnant she says if you have any any issues in the labor pool which is remember we're in covid and and i'm just going to put an editorialist comment on on the record here why if she's so worried about all this why is she working during covid she could have gone on a leave of absence right then and there like 75 of the hospital did but that's just my editor background what i'm really interested in is there seems to be like her zeter's manager was like i'm surprised that she didn't tell her about the dearborn position yeah so that's what this is about and um she it's just like the record is a little unclear on why she just didn't mention this dearborn position to her and one could possibly draw the inference that it had something to do with her attitude about the pregnancy leave and all the requests that had been made and all that i mean that's connected to the prior activities let me address that um tracy's years testified unrebutted that the reason that she did not tell banal about this is because she didn't want banal to feel that she was being pawned off to the dearborn the dearborn site and remember that she has a conversation with banal in august along with lauren bruguette and kevin brank leone the hr person and says we've we've started this program for people who are on layoff to be working with acquisition so by the time that this october thing comes around they've already discussed with the plaintiff that when you're ready to find a job you should be working with talent acquisition so zeter's is asked her deposition why didn't you tell her about this it's a natural question she said i didn't want her to feel that she's being pawned off and my understanding was that the process was for employees to be working with talent acquisition lauren bruguette is asked during her deposition and she goes well wasn't she told about that and and and she's asking herself i i don't know and then she says i don't really recall what tracy and i discussed about whether she should have been told or not that so there's that's the sum total of the evidence so there's no it's lauren bruguette didn't say i told tracy zeter you tell her about this position she answered plaintiff's counsel's question with her own question well was she told about this position now we don't know if that's because lauren bruguette's thinking talent acquisition told her we don't know if it's because she thinks tracy zeter should have told her we just know that lauren bruguette in her deposition asks herself a question well wasn't she told about this so so there's no dispute between this is an argument for the jury i mean you you have a very immediate inquiry and she's already said she's coming back on that day it's it's just it's weird so i i don't disagree with you on that but let's peel the onion back and say okay what is the jury going to be asked to decide so i we've argued in the context of the ultimate question well that's what they're going to be told they're going to be asked why did tracy zeter not tell banal about the position okay that's that's not what they're going to be instructed that's maybe something they talk about but that's not what you would tell the jury so in order for this claim to be actionable about the dearborn position one of two things has to be true she had to be entitled to be to be put in that position upon return from leave that's her interference claim i don't think there's any argument to the contrary that the hospital reinstated her to the same status and position she had at the time that she commenced her fmla leave and that's what she was entitled to be reinstated to when her leave commenced i think the interference claim is closed shut case so that leads us to why didn't she tell her why didn't she tell her about this position okay where does that get her what's the adverse employment action we have no evidence in this record none unlike the callahan case unlike other transfer cases we have no evidence that the plaintiff inquired about the dearborn position we have no evidence that the plaintiff was interested in the dearborn position we have no evidence that plaintiff would have accepted the dearborn position and i think most importantly we have no evidence that anyone at royal oak was capable of transferring her to the dearborn position so there's no adverse employment action that came out of this would you would you so is it because she wouldn't take it because what if the email exchange between zeter and the other employees either just flat out said um no we shouldn't offer that position to her because she's taking fmla leave and we want to discourage that under your view that would be perfectly fine and that strikes me as troubling well um i mean that takes it to an extreme i agree i'm very thankful that i don't have that fact in this case because you're but you're the the principle of law of which you are advocating which is this is not an adverse employment action covers that case well here's where i think i think that we can distinguish your question this way where is the evidence that of animus okay recall that tracy zeter when she learned through the grapevine that bonnell had delivered what did she do she reached out she was the first person from beaumont hospital to reach out to plaintiff and tell her that you could take a leave of absence under the fmla yeah but so so this just goes back to this this issue um you're you just conceded the point there that it really just comes down to animus because your response to me was that this case is different from that hypothetical not because this isn't an adverse employment action but because she didn't take it based on any animus against fmla leave well i i and so that's why that's and then the rubber hits the road on whether there's enough evidence for a jury to find it the well i i i mean i i do think that your your question although raises a troubling fact scenario from a legal perspective is is is one that um could be potentially disposed of legally speaking on the basis that if if there's if i don't have an ability to effectuate the transfer if if there's no showing that the plaintiff um was interested in the position if there's been no showing there's no showing that just go to damages no i don't think so because in in order for that statement in your hypothetical to be probative of anything there would have to be some showing that but for this animus she would have received the position you just said but for that's causation no but okay maybe i maybe i shouldn't have used that context but my point is this if you don't have evidence showing that that that this the utterer of the statement could effectuate the transfer but it i i think that is an overly burdensome standard you have evidence that there's somebody in dearborn who is really desperately looking for a sonographer i mean he's called he called again and he says is that person available we really need somebody here and and she doesn't say oh she's coming back from leave or she doesn't tell her they're looking for somebody in dearborn if that's something you're interested she just completely pushes it under the rug i i appreciate i do appreciate the perspective of the court but if you read the whole email from the manager in dearborn he says hope all is well reaching out about possible echo lab candidates for the dearborn campus we have a full-time day shift open and we aren't getting you mentioned you possibly had someone interested in a full-time position at our last meeting so somehow between the last meeting and this email she develops animus towards the towards the plaintiff my point is there's no evidence of animus on this record there's no evidence that the decision that she didn't provide the plaintiff's name arguably supplies the evidence of animus just by virtue of not saying her name is evidence that what what what if it what but but how do we where is the evidence that plaintiff has presented that the the decision not to provide the name is any different than the reason that tracy zeter said i didn't want her think she was being pawned off and i thought she should follow the process that is the unrebutted testimony if there was that were the case nobody would ever get to the jury you're saying you have to accept the defendant's word on why they did it unless there's unless there's something to the contrary unless they're legitimate inferences to the contrary and you're saying there are no legitimate inferences i am the only the only negative thing she ever said to this individual the entire time she was employed was in the first the second conversation about her accommodation she never mentioned an ill word about fmla she never mentioned an ill word about this alleged disability which we don't think she even has one she never mentioned anything about that's it you've got one isolated comment in the history of their time together and so i don't believe legally speaking that you can take one comment for which she apologized 10 times and have no comments relative to the fmla that are negative in fact everything's positive she realized she made a mistake she probably went back to the office and said oh and so she was very careful after that well that that's where your honor with all due respect i think that that is those inference those are things that are not borne out by the record that the record doesn't support that conclusion i mean we haven't talked about the layoff um and maybe we we should have in all these minutes that used up but there's an argument that it was very that the criteria were left to the supervisor and the supervisor sort of used a metrics that she devised that lo and behold eliminated the two pregnant women you know i'm way past my time can you want me to address that or no but i'm saying that whether or not that supports pregnancy discrimination it's facts that could bolster the plaintiff's case on her motivations that look you know this happened too that she wasn't you know she did get rid of i mean it's maybe that's not actionable on its face but it's it's a fact it's one of the facts but probably the strongest fact is that it was she gave an explanation as to why she didn't tell her but it you know it one could conclude that that the explanation makes no sense your honor i i can't argue with you no you're doing the best you can i guess i'm trying to argue i um i i'm way past my time and i if i can just mention this the the layoff just real quick because i just think one point is is all i need to make on that and i really appreciate the the healthy discussion burgette came to zeter with four people and one of them was banal zeter could have just said oh cool banal's already on the list we're good we're good to go banal was getting laid off no matter what is my point temporarily so you know the the what ends up happening from there and obviously they're you know it's very well briefed i think in terms of the process that went on you know that that's what happened so anyway i i really appreciate the extra time as well thank you very much well here rebuttal thank you so much your honors um several years ago i deleted my social media accounts because it felt like i was just into the void i wasn't getting responses nobody was really hearing me and it felt just just like completely pointless and i just want to thank the court so much for the questions that it's been asking but because i feel like for the first time in this case i'm not shouting into the void i feel like we are actually making comments that are being heard and understood and it doesn't mean you're gonna win no i understood but the the extent to which the lower court completely just misunderstood or disregarded so many important aspects of this case made it seem like we we just legitimately were not being listened to at all regardless of the outcome it's clear that we are being heard i do want to point out one thing i thought um the strongest argument i thought you had was the non-response on dearborn it does strike me as reasonable perhaps to say well the reason i didn't provide that information is that is through a different channel of the hospital so that's that's not an appropriate my briefs have touched on that that's not an appropriate way to phrase it because uh we took the deposition of the hr person specifically in talent acquisition assigned to work with our client lisa mastedge and according to her uh there's no getting around talent acquisition like it's been thrown out there by the defendant talent acquisition doesn't really do head hunting so much as it processes applications and hirees and so even if my client had been told about the job and put in touch with matt smith my client would have then had to put in her application through talent acquisition work with them and process it accordingly was the job ever posted through talent acquisition or did we we don't know we know for a fact tracy's eider never looked to check tracy's eider has no idea whether it was ever posted talent acquisition or if there was any other way that our client could have ever found out about it i do feel it's important to touch on one point that was brought up uh miss bonnell did object to her disparate treatment on at least two distinct occasions after her conversation in february with tracy's eider and then when tracy's eider came back and apologized for the comments she made uh my client went to lauren burgett and expressed that she felt at risk for pregnancy discrimination that conversation was recorded and is on the record she very clearly says that she's concerned that this conduct may continue while she's on maternity leave she exchanges emails with ona lee watson and kevin uh kevin brankley on the hr manager and then the hr person she was working with and she uses the phrase pregnancy discrimination multiple times in those email exchanges kevin brankley own i believe was even on vacation at the time and still felt the need to step in and say whoa whoa whoa i i don't think that's you know i i don't think pregnancy discrimination what is what's going on here um they actually recognize that she there's an email exchange in which kevin brankley on calls for a potential lawsuit because of the whole layoff because they knew that she had expressed opposition that she felt that this was pregnancy discrimination so i do feel it's important that we make it clear what is what is the evidence that she would have accepted at the airport transfer i mean she did seem to have a preference for where she was working she liked where she was working there are at least two specific instances on the record that support that she was looking for other jobs while she was on maternity leave she sends an email to kevin brinkley own and only watson in which she says i tried to talk to uh to talent acquisition about getting a job somewhere else but they said they won't work with me unless i'm ready to take it right now she also testified on the record that she was looking for other jobs and she couldn't find any that were appropriate to her to her situation yes when she asked would she take this job if it had been offered to her no that question was not asked of her uh that question that position is an equivalent position it's the same distance she lives smack dab halfway between royal oak and dearborn it would have been the exact same commute between the two places the same type of job clearly uh matt smith the manager over there felt that a person who was an ultrasonographer with tracy cider would be qualified to be an ultrasonographer with him as well um there are criteria for what constitutes an equivalent position i do feel it's important to state that there is also a uh there's a standard for uh failure to transfer cases i don't know that the sixth circuit has actually adopted the four-part test but the crux of it is applicable to the sixth circuit cases as well and the cases that have set forward especially in i believe it's the uh the 11th circuit and the third i'm sorry the ninth circuit the first circuit the four-part test is protected status they were qualified for a position that was available the employer did not offer that available position and there's other evidence giving an inference of discrimination miss bonnell what it was protected status and protected activity fmla leave maternity leave all of that she was qualified for other available positions that were open at the time the dearborn position the employer did not offer it doesn't say the employee needs to have declined it there's nothing else the standard is the employer did not offer it and then there was there's other evidence giving an inference of discrimination tracy cider on the same day she declined to pass information along mentioned plaintiffs protected status protected activity if tracy zyder had said oh they're coming back from maternity leave and they're black so i don't if they'll want this position there'd be no question that that is obviously evidence of racial animus why else would they mention that pregnancy is no less protected under the applicable laws here than races okay thank you the case will be submitted